Chief Justice Robertson
delivered the opinion of the court.
This is an action of trover by Lycan vs. Newson, for a sorrel mare, in which a verdict and judgment were obtained for $100, in damages.
Each party derived his claim to the mare, from ■Reubin Clark.
Clark being about to be sent to the penitentiary, delivered the mare to Lycan, (who had married his “step daughter,” and lived about a quarter of a mile from him,) and took his note for $120, as the price of her, to be paid to Clark’s wife and children, if he never returned to them. The mare was all, or nearly all the property which Clark owned, and it seems that he was in debt. Lycan retained the possession of the mare, generally, during Clark’s absence, but she was occasionally used by Clark’s family. During Clark’s confinement, James Selby, who was his creditor, filed a bill in chancery against him and Lycan, to subject to the payment of his debt, whatever Lycan owed Clark. Lycan, in his answer, denied that he owed Clark any thing!
This answer being evasive, the court required .another answer, in which Lycan stated that he had given to Clark a note for “a mare,” but that Clark -owed him more than the amount of it, and that they had made a settlement, before Clark went to the penitentiary, in which settlement, his note was discharged and cancelled! Upon this answer and one deposition, the circuit court decreed that Lycan should pay to Selby $120 for Clark. Clark did not answer the bill, and the only allusion to the sorrel mare, which the record of this chancery suit contains, is .found in the answer of Lycan, in which be says that he purchased lia mare” from Clark and paid him for her, before he was sent to the penitentiary. The proof in this case is, that the sorrel mare roas to be paid, for if Clark should never return, but if he should return, she was to be Ms property.
Record of a snib »ot *’vi-one°^h¿eainSi no party WaS5
After Clark’s return from the penitentiary, he had the occasional possession and use of the mare, and had taken her to the farm of an acquaintance, and had her there fattened'; after which he sold her to Newson for $55. Whilst Newson was in possession of her, an execution on the decree against Lycan, was levied on her, and a jury, empannelled to try the right of property, found a verdict for Newson; whereupon, she was restored to him, and then this suit was brought against him by Lycan.
in addition to the foregoing facts, many circumstances were proved, tending strongly to evince that the contract between Clark and Lycan, was designed to defraud the creditors of the former, and it was proved by a witness who was privy to the contract, and wrote the note for $120, that the mare was to be Clark’s if he ever returned from the penitentiary, and that both Lycan and Clark stated, during the negotiation, that the object of the'-contract was to protect the mare from the claims of Clark’s creditors.
The circuit court permitted the record in the chancery suit, to be read to the jury as evidence of title in Lycan; to which Newson excepted.
The counsel for Newson moved the court to instruct the jury that if the contract between Clark and Lycan-was made to defraud the creditors of Clark, Lycan had no right to recover from Newson, provided he (Newson) was an innocent purchaser, for a valuable consideration; but the court refused to give the instruction.
And after the verdict, the court overruled a motion for a new trial.
These several decisions by the circuit judge, are called in question by the assignment of errors.
The court erred in each of the foregoing opinions:
1st. The record was not legitimate evidence of title in Lycan. Waiving any other objection to its admissibility, it was incompetent, because the right to the mare is not decided, or even brought in issue in it. The bill does not allude to the mare. Clark not answer. Lycan himself does not identify or'de *442 scribe the mare, in his answer. The record, there-, fore, does not show how he acquired title to the mare now in contest, and if it did, it would not be evidence against Clark or his alienee, because the right to the ;mare was not put in issue, or even alluded to incidentally; III. Marshall, 304; Philips on Evidence, 224-34.
Fraudulent 9al¡ of horse, ■■will not enable vendee, to recover the horse from a subsequent bona fide purchaser.
If verdict be agaiirit testimony which is of such character, when properly scrutinized, as to leave no reasonable excuse for doubt in an intelligent. & discriminating mind, new trial should be granted.
Turner, for plaintiff; Denny and Triplett, fox defendants.
2d. The statute of frauds applies conclusively to the case, if Newson purchased bona fide, and for a valuable-consideration, and if the contract between Clark and Lycan could be’ considered fraudulent. The instruction moved for, to this effect, was not abstract; there was strong and direct testimony to establish both facts.
3d. -It would result necessarily, that a new trial ought to have been awarded for the foregoing errors of the court. But it ought to have been granted, also, because the verdict is not authorized by the evidence. The testimony not only preponderates against the verdict, but it is of such a character, when properly scrutinized and understood, as to leave no reasonable excuse for doubt, in an intelligent and disinterested mind.
Wherefore, the judgment of the circuit court is reversed, the verdict set aside, and the cause remanded for a new trial.